**KENTUCKY COMMISSION ON HUMAN RIGHTS and Ethel Clay, Appellants,**

v.

**Nelson BARBOUR, Appellee.**

Court of Appeals of Kentucky.

Sept. 21, 1979.

**850**

Galen A. Martin, Thomas A. Ebendorf, Samuel H. DeShazer, Kentucky Commission on Human Rights, Louisville, for appellants.

William E. Johnson, Johnson, Judy & Gaines, Frankfort, for appellee.

Before HAYES, LESTER and WHITE, JJ.

HAYES, Judge.

In this appeal from the Franklin Circuit Court, we are faced with the difficult and sensitive task of reviewing the constitutionality of KRS 344.230(3)(h). That statute authorizes the Kentucky Human Rights Commission to award monetary damages for embarrassment and humiliation suffered as a result of unlawful discrimination. The power to make such an award is one of the enumerated forms of "affirmative action" which the Commission may take based on findings of fact and conclusions of law that such relief was warranted.

The Board, pursuant to a complaint filed by Ethel Clay, held a full public hearing according to the procedures set out in KRS Chapter 344 and 104 Kentucky Administrative Regulations § 1:020. It awarded $750.00 to Ms. Clay for embarrassment and humiliation pursuant to its findings that she had experienced housing discrimination on the basis of race at the hands of the appellee Nelson Barbour. The Board did not explain why that particular sum was deemed appropriate. There was no finding that she had suffered more tangible monetary losses because of appellee's unlawful action.

The decision was appealed to the Franklin Circuit Court, which voided the award on the basis that the statute authorizing it was unconstitutional for " . . . vagueness, overly-broad delegation of Legislative authority, and usurpation of judicial authority. . . ." The rest of the Commission's findings and orders were undisturbed.

The specific fault found with the provision was that it contains no "standards or guidelines" for the exercise of the discretion conferred upon the Commission. The trial court's Opinion and Order noted that no monetary ceiling is specified for damages awarded to compensate for embarrassment and humiliation. The court below believed that neither the provision that the award must be based upon the Commission's findings, nor the statutory provision for review in circuit court of Commission findings, cures the legislative failure to limit recovery for embarrassment and humiliation.

We first note that the necessity for standards or guidelines accompanying legisla-

tive delegations was expressly rejected by the former Kentucky Court of Appeals in *Butler v. United Cerebral Palsy of Northern Kentucky, Inc.*, Ky., 352 S.W.2d 203 (1961). That opinion placed Kentucky in the forefront of states adopting the "safeguards" test proposed by Professor Kenneth Culp Davis. *Butler* quoted Davis' *Administrative Law Treatise* at some length on the reasons for the adoption of a "safeguards" standard and the policies to be followed in applying that standard:

> The typical opinion of a state court on a delegation problem is quite unfortunate both in what it says and what it fails to say. It says that (1) legislative power may not be delegated, (2) that "filling up the details" is not an exercise of legislative power, (3) that legislative power is not delegated if the Legislature has laid down a standard to guide the exercise of the power, and (4) that presence or absence of vague verbalisms like "public interest" or "just and reasonable" make all the difference between valid legislation and unlawful delegation.

> The typical state court opinion on delegation fails to say anything about (1) the reasons for the legislative choice to make the particular delegation, (2) the practical consequences of allowing the Legislature to do what it is trying to do, (3) the usual lack of practical advantage in compelling the Legislature to dress up the statute with vague verbiage that the judges call standards, (4) the questions whether in the circumstances good government calls for a headlong choice of policy by the legislative body or whether it requires the working out of policy by case-to-case adjudication conducted by those who have the advantage of knowing the facts of particular cases, (5) the need for protection against unfairness, arbitrariness, and favoritism, (6) the importance of procedural safeguards, or opportunity for a judicial check, and in some circumstances of a proper legislative or even administra-

tive supervision or check, or (7) the need for providing help to the Legislature in its search for practical and efficient ways of accomplishing legislative objectives . . . The notion that a standard would be required started out rationally; the belief was that the legislative body ought to state an "intelligible principle" and that the administrative authority would merely "fill in the details". . . . The difficulty is that it is often affirmatively desirable for the legislative body to avoid either an intelligible principle or a clear delineation of the general policy, for the simple reason that many questions of basic policy may better be worked out by an agency than by a legislative body.[1]

A helpful distillation of the essence of *Butler* and subsequent cases appears in *Legitimizing the Administrative State: The Judicial Development of the Nondelegation Doctrine in Kentucky*, Edward H. Ziegler, Jr., 4 *Northern Kentucky Law Review* 87 at 118 (1977). Mr. Ziegler lists five standards against which a delegation should be reviewed under the "safeguards" test:

> (1) whether provisions exist in the delegating statute sufficient to determine that the powers delegated are confined to a specific area of authority or are at least within an ascertainable scope of authority; (2) whether the delegation is to a newly created agency or to a long established agency with a record of experience and expertise in the field; (3) whether significant decisions will be left to the untrammelled discretion of the agency or if the agency is required to establish criteria for its decisions by issuing regulations; (4) whether agency decisions affecting the rights of individuals are inherently reviewable by the courts in Kentucky; and (5) whether the delegation is necessary in light of the practical needs of effective government.

Application of those factors to the problem before us is helpful but does not point absolutely to a conclusion: we find that

---

1. 352 S.W.2d at 207, citing 1 *Treatise, supra* note 134, at 148–49.

factors (1) and (4) are resolved favorably to the statute while (2) and (3) must be resolved against it. The result reached under test (5) is, of course, a highly subjective matter. However, neither our research nor that of the parties has disclosed another statute in any jurisdiction within the United States which authorizes damages for embarrassment and humiliation without placing a dollar limit on those damages. Any argument that a provision allowing such damages without statutory limitation is "necessary in light of the practical needs of effective government," has obviously not taken the legislatures of our nation by storm.

We have no wish to invalidate this constitutionally marginal statute if such a course can be avoided. We cannot effect a direct cure of the statute's probable deficiency in that it is not our function to impose a dollar limit of our own devising.

However, we do not need to reach the constitutionality of the statute at this time because we feel that the findings of the Commission do not justify the award in this case.

■ We do feel that it is within our province to require the strictest compliance with the provision that affirmative action must be in accordance with the Commission's findings of fact. We require that that compliance be evidenced by detailed written findings in support of any award of damages for embarrassment and humiliation. No such findings have been made by the Commission in this case. We hope and believe that the requirement will provide and demonstrate a safeguard against untrammelled agency discretion.

■ Thus, where the Commission finds that humiliation and embarrassment have resulted from unlawful discrimination, we require that it set out with considerable particularity the nature and degree of the injury suffered. Elements which we believe would be appropriate to discuss are: (1) the number of persons exposed to the

defendant's conduct; (2) the number of encounters during which the claimant was exposed to behavior inducing embarrassment or humiliation; (3) whether the actions of the defendant caused humiliating public exposure; (4) any evidence of severe emotional damage; and (5) the presence or absence of aggravating factors such as abusive language.

■ We remand this case to the Franklin Circuit Court with instructions that it be remanded to the Kentucky Commission on Human Rights for further findings in accordance with this opinion.

All concur.